## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

United States of America,

    v.

Lorenzo H. Jones,

    Defendant.

Case No. 2:18-cr-187

Judge Michael H. Watson

### OPINION AND ORDER

Lorenzo Jones ("Defendant") has been charged with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant filed a motion in limine, ECF No. 21, motion to suppress, ECF No. 22, and motion to dismiss the indictment for failure to preserve exculpatory evidence, ECF No. 27.[1] On February 19, 2019, the Court held an evidentiary hearing on these motions. ECF No. 31. The Court also ordered the parties to submit post-hearing briefs on the motions, which they did. ECF Nos. 33, 35, and 36.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion in limine, ECF No. 21, **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to suppress, ECF No. 22, and **DENIES** Defendant's motion to dismiss, ECF No. 27.

---

[1] On July 9, 2019, the Government filed a superseding indictment. ECF No. 37. The superseding indictment is identical to the original indictment as it relates to the issues raised in Defendant's motions; therefore, the Court is ruling upon the motions as they were filed instead of requiring the refiling of each motion.

## I. BACKGROUND

On October 21, 2017, Officers Christopher Davis ("Officer Davis") and Matthew Dover ("Officer Dover") were on patrol in a marked police cruiser when they observed a car parked on E. Mound St. with the engine running. A man in the front passenger seat got out of the car, and the car then pulled away from the curb without signaling. The officers followed the car as it turned again, allegedly without using a turn signal. The officers then attempted to conduct a traffic stop. Defendant exited the car and ran from the officers. Officers commanded Defendant to stop, and eventually Officer Davis tackled Defendant. During the struggle, Officer Davis allegedly observed Defendant reach down and pull a handgun from his waistband and place it inside of a tire in an attempt to hide the gun. Officers placed Defendant under arrest and located the loaded gun in the tire. After Defendant was arrested, his vehicle was impounded and towed and thus was subject to an inventory search wherein the officers discovered a digital scale, currency, and a small amount of cocaine.

In September 2018, Defendant was indicted on one count of unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1). ECF No. 11.

## II. MOTION IN LIMINE

Defendant's motion in limine seeks to preclude the use of two types of evidence at trial: (1) contraband or evidence of other crimes not identified in the indictment; and (2) any testimony regarding Defendant's criminal record or the nature of his prior felony convictions. ECF No. 21.

## A. Evidence Relating to Any Contraband or Evidence of Other Crimes Not Identified in the Indictment

First, Defendant moves to "preclude testimony and/or evidence at trial relating to any and all contraband and/or evidence of other crimes not identified in the indictment." Mot. 1, ECF No. 21. Specifically, Defendant moves to exclude testimony or evidence related to "a small quantity of cocaine (approximately 1.9 grams), a small sum of currency . . . and a digital scale" that the government alleges were found in the vehicle driven by Defendant on the night of his arrest. *Id.* Defendant also seeks to preclude any "testimony and/or evidence relating to any allegation that he was under suspicion for drug trafficking, including any testimony about or recordings of his conversation(s) with law enforcement officers regarding such matter." *Id.*

Defendant argues that this evidence is inadmissible under Federal Rule of Evidence 404(b)(1). Rule 404(b)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rule also states that "[t]his evidence may be admissible for another purpose." Fed. R. Evid. 404(b)(2).

The Government argues that the cocaine, currency, and scale were lawfully discovered in the vehicle driven by Defendant and are admissible as background evidence that is inextricably intertwined with the charged offense. Resp. 1, ECF No. 25. The Government specifically argues that the evidence is

probative of Defendant's "mental state and his motive for fleeing the police and discarding a firearm upon being apprehended."  *Id.* at 2.

Background evidence is an exception to Rule 404(b).  *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000); *see also United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013).  Background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748.  "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *Id.*  Background evidence is allowed "to put the charges in the appropriate context" and is permitted because "defendants are not entitled to a 'sanitized' recounting of the facts, and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events.'"  *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (internal citations omitted).

Although the cocaine, currency, and digital scale allegedly found in the car do not go directly to proving one of the elements of the charged offense— unlawful possession of a firearm—they are relevant background that helps explain why Defendant would need a firearm.  *See United States v. Till*, 434 F.3d 880, 884 (6th Cir. 2006) (affirming trial court's admission of evidence of drug

possession as background evidence when trial court found it was "relevant evidence in this case because of the propensity of people involved with drugs to carry weapons"); *United States v. Andrews*, No. 11-1415, 2012 U.S. App. LEXIS 27380, at \*5 (6th Cir. June 21, 2012) (finding that, "[u]nder any standard of review, the district court did not err by permitting a police officer to testify about evidence of drugs and drug-trafficking paraphernalia found in the car" in a felon in possession case); *United States v. Rhodes*, 314 F. App'x 790, 793 (6th Cir. 2008) (affirming denial of motion in limine that sought to exclude evidence of drugs in case involving firearm-related offenses and noting that "[d]eclining to charge a drug offense does not bar appropriate trial reference to drugs"). Indeed, the Sixth Circuit has stated that "[t]here is strong authority for the proposition that evidence of drug possession can and perhaps ought to be admitted in cases of alleged firearm possession, partly to show motive for such possession." *Till*, 434 F.3d at 883.

Even though this evidence is properly admissible as background evidence, it would still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The Court has "broad discretion" to make "determinations of admissibility based on considerations of relevance and prejudice[.]" *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008) (quoting *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006)). Here, in line with what courts have found in similar cases, evidence of the drugs, scale, and currency has probative value that is not substantially

outweighed by the danger of unfair prejudice. *See Till*, 434 F.3d at 884 (agreeing

with the district court's reasoning, including that drug evidence was "admissible

as temporally and spatially-connected background evidence, and [was] directly

probative of defendant's knowing possession of the firearm" and that "its

probative value cannot be said to be substantially outweighed by its potential for

unfair prejudice"); *Rhodes*, 314 F. App'x at 793 (noting as part of its analysis that

"the district court followed the accepted view that guns . . . are 'tools of the trade'

used to protect drugs and drug money").

Accordingly, the Court **DENIES** this portion of Defendant's motion in limine

and concludes that evidence or testimony regarding the cocaine, currency, and

digital scale that were allegedly found in the car Defendant was driving is

admissible in this case.  Defendant relies on the "same reason[s]" to argue that

evidence that Defendant was suspected of drug trafficking should also be

excluded.  Therefore, for the same reasons, the Court will not exclude such

evidence on this basis.

### B. Any Testimony Regarding Defendant's Criminal Record or the Nature of His Prior Felony Convictions

Defendant is charged with unlawful possession of a firearm in violation of

18 U.S.C. § 922(g)(1).  As mentioned previously, under § 922(g)(1), the

Government must prove the following elements: "(1) at the time of the offense,

the defendant previously had been convicted of a felony offense punishable by

imprisonment for more than one year; (2) the defendant knowingly possessed a

firearm or ammunition; and (3) the firearm or ammunition previously had been shipped or transported in interstate commerce." *United States v. Workman*, 755 F. App'x 533, 536 (6th Cir. Nov. 9, 2018).

Defendant is willing to stipulate to the first element, that he has a prior felony conviction. Accordingly, Defendant requests that the Government be precluded from presenting any testimony or evidence regarding his criminal record or the nature of his prior felony convictions. Additionally, Defendant argues that the Indictment, which lists his prior felony convictions, should not be introduced into evidence or otherwise presented to the jurors due to the potential for undue prejudice. On January 25, 2019, at a hearing before the Court, the Government orally agreed to stipulate to the element of a prior felony conviction. Therefore, the Court **GRANTS** this portion of Defendant's motion in limine, and the only evidence permitted at trial concerning the first element of the charged offense is the parties' stipulation that the Defendant has been convicted of a crime punishable by more than one year.

Accordingly, Defendant's motion in limine is **GRANTED IN PART** and **DENIED IN PART**.

### III. MOTION TO SUPPRESS

Defendant seeks to suppress all evidence obtained as a result of his detention and all statements that he allegedly made after his arrest. Defendant makes three arguments in support of his suppression request: (1) the initial stop of Defendant was pretextual and without probable cause; (2) Defendant's car

was unlawfully searched; and (3) Defendant did not knowingly and voluntarily waive his right to counsel and right to remain silent.

### A. Traffic Stop

Defendant contends that the initial stop was pretextual and without probable cause that Defendant committed a traffic violation. On this basis, Defendant argues that all evidence and statements subsequently obtained must be suppressed as fruit of the poisonous tree.

In contrast, the Government argues that the seizure was supported by reasonable suspicion and probable cause that Defendant committed a traffic violation. An officer may lawfully stop a car if the officer possesses probable cause based on reasonable grounds to believe that a violation occurred. *United States v. Warfield*, 727 F. App'x 182, 185–86 (6th Cir. 2018). This is a "fact-dependent determination [that] is made from the totality of the circumstances and includes a 'realistic assessment of the situation from a law enforcement officer's perspective.'" *Id.* at 186. Columbus City Code 2131.14 requires a driver to signal when moving right or left. "A driver's failure to use a turn signal provides probable cause to justify a traffic stop irrespective of the officer's subjective intent." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

Here, Officers Davis and Dover both testified that they observed Defendant twice fail to signal when he pulled to and from the curb. Tr. 14, 60, ECF No. 32. In light of the Officers' testimony, the Court finds that the Officers had probable cause to conduct a traffic stop. Officers Davis and Dover also testified that upon

initiating a traffic stop, Defendant fled from the officers on foot. *Id.* at 19, 67. As such, Defendant's subsequent arrest for fleeing and eluding an officer was supported by probable cause, and the subsequent discovery of the firearm was lawful and not fruit of the poisonous tree. The Court therefore **DENIES** this portion of the motion to suppress.

### B. Search of Car

Defendant also argues that all evidence found in Defendant's vehicle should be suppressed because Defendant was in police custody at the time of the search, and the police did not have probable cause to believe evidence of unlawful possession of a firearm would be found in the vehicle. Mot. to Suppress 1, ECF No. 22.

The Government provided testimony on the search of the vehicle at the suppression hearing. Both Officers Dover and Davis testified that they looked through the window of Defendant's car and could see in plain view a baggie that appeared to contain a white rock consistent with crack cocaine. Tr. 39, 121, ECF No. 32. Defendant argues that "Officer Dover's testimony regarding seeing cocaine in plain view is not plausible in light of his explanation of how he viewed the cocaine, and the location and small size of the baggie of cocaine as seen in Exhibit D13." Supp. Mem. 8, ECF No. 33. The Court disagrees. Based on the photographic evidence presented and the consistent testimony of the two officers on their ability to observe the drugs, they had probable cause to conduct a

search of the vehicle.  The Court therefore **DENIES** this portion of the motion to suppress.

### C. Waiver of Miranda Rights

Defendant next argues that all statements he allegedly made after his arrest should be suppressed because the Government cannot carry its burden to prove that Defendant knowingly and voluntarily waived his right to counsel and the right to remain silent.  In response, the Government argues Defendant waived his *Miranda* rights, consented to an interview, and his statements were voluntarily made and thus admissible.

"It is the government's burden to establish a waiver by a preponderance of the evidence."  *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009).  A waiver must be voluntary, which means it is "the product of a free and deliberate choice rather than intimidation, coercion or deception."  *Id.*  "The waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."  *Id.*  A waiver is knowing and intelligent if the "suspect knew that he could choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time."  *Id.*  A waiver may be inferred when a defendant is properly informed of his rights, indicates that he understands them, and does nothing to invoke those rights.  *Id.*  A waiver does not need to be in writing or expressly made but can be inferred from the actions or words of the person interrogated. *Id.*

Officer Davis testified that after Defendant was arrested and secured in the police cruiser, Officer Dover read Defendant his *Miranda* rights. Tr. 40, ECF No. 32. Officer Davis and Sergeant Joshua Van Dop ("Sergeant Van Dop") testified that they were present for the reading of the *Miranda* rights.[2]  *Id.* at 40–41, 172. Defendant also signed a written waiver of his Miranda Rights. *See* Gov't Exhibit O.

### 1. Interview with Sergeant Van Dop

After Defendant was given his *Miranda* rights, he agreed to speak to Sergeant Van Dop. Tr. 41, ECF No. 32 (testimony from Officer Davis). Nonetheless, Defendant argues that his statements to Sergeant Van Dop must be suppressed. In support, Defendant points to 1) the officers' poor recollection of the events in question, 2) a lack of testimony regarding Defendant's sobriety at the time of the interview despite evidence that Defendant had consumed alcohol that night, and 3) Sergeant Van Dop's testimony that he advised Defendant that the purpose of the interview was to investigate the use of force by officers.[3]

---

[2] Officer Davis was in the driver's seat, and Officer Dover and Sergeant Van Dop were standing outside the vehicle with the passenger door open when Officer Dover read Defendant his *Miranda* rights.

[3] Defendant also states that "Van Dop's testimony suggests that Dover stood off to the side and would not have been in a position to hear the conversation between Van Dop and [Defendant] to be able to weigh in as to whether [Defendant] had knowingly and voluntarily waived his rights." Def. Supp. Mem. 10, ECF No. 33. However, Officer Davis testified that he was in the front of the cruiser when Defendant, who was sitting in the back seat, was read his *Miranda* rights by Officer Dover. Tr. at 81–82. Officer Davis also testified that Defendant agreed to speak with Sergeant Van Dop. *Id.* at 41. Furthermore, Defendant did not introduce contrary evidence to suggest that he was not mirandized or did not agree to speak with Sergeant Van Dop.

Defendant's arguments fail. Officers Davis and Dover and Sergeant Van Dop all testified that Defendant was informed of his Miranda rights and agreed to speak with Sergeant Van Dop. Tr. 40–41, 124, 161. Their testimony regarding the circumstances of Defendant's questioning by Sergeant Van Dop is sufficiently clear and consistent to convince the Court that Defendant was informed of his rights and agreed to waive them to speak with Sergeant Van Dop.

First, Defendant did not elicit testimony at the suppression hearing, either from Defendant himself or on cross examination of the officers, that Defendant was intoxicated or appeared intoxicated. The mere fact that Defendant admitted to having consumed alcohol on the night in question does not remove his ability to knowingly and intelligently waive his rights.

Second, Defendant has not pointed to any case law supporting his argument that he was unaware his statements to Sergeant Van Dop could be used against him solely because Sergeant Van Dop stated that the purpose of the interview was to investigate the use of force.

Third, Sergeant Van Dop's interview was the first questioning that took place after Defendant was read his Miranda rights. There is no testimony suggesting that Sergeant Van Dop gave Defendant any assurance that statements made in furtherance of a use of force investigation were somehow privileged or inadmissible.

The Government has demonstrated by a preponderance of the evidence that Defendant knowingly waived his rights in order to talk with Sergeant Van

Dop.  The Court therefore **DENIES** Defendant's request to suppress his interview with Sergeant Van Dop.

### 2.  Interview with Detective Stevens

After Defendant was arrested and spoke with Sergeant Van Dop, he was taken to the Columbus Police Department's headquarters to be interviewed by Detective Melanie Stevens ("Detective Stevens").  *Id.* at 227–28.  Before talking with Defendant, Detective Stevens read Defendant his *Miranda* Rights.  *Id.* at 228.  Defendant then signed a form stating that he understood his rights. Detective Stevens then asked Defendant questions and Defendant answered. Defendant never asked for an attorney.  *Id.* at 229.  During the interview, after Defendant indicated he ran from the police because his license was suspended, the following exchange took place.

> DETECTIVE STEVENS: Suspended? Okay. All right. And they said that you ran up on a porch and at that point they kind of grabbed ahold of you at that time and they said that you took a gun out of your waistband and put the gun in a tire?  Is that your gun? Lorenzo?
>
> LORENZO JONES: Remain silent.
>
> DETECTIVE STEVENS: Okay.  All right.
>
> DETECTIVE STEVENS: Do you want to talk about anything else with me? Because I'm going to keep asking you about the gun.
>
> LORENZO JONES: All I know is a guy got in my car, guy got in my car, was on the side of the road and he pulled -- the police pulled behind us and -- (unintelligible) -- got up and just got out of the car and walked across the street.

*Id.* at 245–50.  The interview continues for another six or seven minutes.

Defendant argues that he unambiguously asserted his right to remain silent to Detective Stevens when he said "remain silent" but that she nevertheless continued interrogating him. Reply to Supp. Resp. 8, ECF No. 36. On this basis, Defendant seeks to suppress all statements he made to Detective Stevens and Officer Davis after he invoked his right to remain silent.

If a defendant unambiguously says that he wants to remain silent or that he does not want to talk with the police, he has "invoked his 'right to cut off questioning.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)). After a defendant has made this unambiguous statement "in any manner, at any time . . . during questioning, that he wishes to remain silent, the interrogation must cease." *Bird v. Brigano*, 295 F. App'x 36, 37 (6th Cir. 2008) (quoting *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966) (internal quotation marks omitted)).

The Court finds that Defendant made an unambiguous statement that he wished to remain silent. After Detective Stevens began asking about the gun, Defendant simply responds with "Remain silent." Detective Stevens appeared to clearly understand Defendant's invocation of his right to remain silent, because she followed his invocation with the question of whether he wanted to discuss anything else. Nonetheless, Detective Stevens did not cease the interrogation

after Defendant invoked his right to remain silent but rather kept interrogating[4] him.

At the suppression hearing, Detective Stevens explained that she continued questioning Defendant after he said "Remain silent," because "[h]e didn't lawyer up so I kept going." Tr. 256, ECF No. 32. When Detective Stevens was asked if she believed she could keep questioning Defendant as long as he did not request an attorney, Detective Stevens responded, "I can talk to them. I can talk at them and keep having conversation with them as long as they don't lawyer up." *Id.* Detective Stevens is incorrect. She could not continue interrogating Defendant once he invoked his right to remain silent regardless of whether he asked for an attorney. The fact that she did so violated Defendant's Fifth Amendment rights, and the Court therefore **GRANTS** Defendant's motion to suppress all statements Defendant made to Detective Stevens after he invoked his right to remain silent.

### 3. Interview with Officer Davis

Sometime after Detective Stevens concluded her interview with Defendant, Officer Davis drove Defendant from the police station to the jail. While the two were in the police car, they began having a conversation about Defendant's

---

[4] Detective Stevens can fairly be said to have continued the interrogation. That term, under *Miranda*, "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

alleged crimes. Defendant also moves to suppress these statements "as a continuation of the unlawful interrogation by Stevens." Def. Supp. Mem. 11, ECF No. 33.

Officer Davis was only permitted to resume questioning of Defendant after he invoked his right to remain silent if Defendant's "right to cut off questioning was scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (internal quotation marks omitted). "*Mosley* requires an examination of whether the officers' conduct demonstrates a failure to respect the defendant's right to cut off questioning, thereby indicating an 'effort to wear down the defendant's resistance and make him change his mind.'" *Davie v. Mitchell*, 547 F.3d 297, 309 (6th Cir. 2008) (citing *Mosley*, 423 U.S. at 105–06).

The Court considers several factors when determining if Defendant's right to cut off questioning was scrupulously honored:

> whether police advised the defendant of his *Miranda* rights at the first interrogation, (2) whether police immediately ceased the interrogation upon defendant's request, (3) whether police resumed questioning after a significant period of time, and (4) whether police provided new *Miranda* warnings at the successive interviews.

*Id.* at 310. It is also relevant if the later questioning was about the same crime or a different crime. *Id.* The Court addresses each factor in turn.

The first factor weighs in the Government's favor as Defendant was advised of his *Miranda* rights before his interviews with Sergeant Van Dop and Detective Stevens.

The second factor weighs in Defendant's favor because, as already discussed, Detective Stevens did not cut off questioning after Defendant earlier invoked his right to remain silent.

The Court cannot make a definitive conclusion on the third factor because it is unclear how much time elapsed from the time Detective Stevens finished questioning Defendant to when he began speaking with Officer Davis. However, the Court can discern from the video record that Officer Davis did not immediately begin questioning Defendant after Detective Stevens concluded her interview. Furthermore, Officer Davis's questioning of Defendant took place in a different location from the interview with Detective Stevens.

The fourth factor weighs against the Government. The Government has not argued that Officer Davis provided a new *Miranda* warning to Defendant before he began questioning him. Exacerbating this deficiency, it appears that statements Officer Davis made to Defendant actively undermined the purpose of a *Miranda* warning by suggesting to Defendant that any statements he made would not be used against him. Officer Davis indicated on two separate occasions that Defendant could talk because the police report was already complete. In one of these instances, immediately after asking Defendant about his alleged possession of the gun, Officer Davis said, "Like I said, everything's done. I don't care. My report's done." Def. Ex. 27. Upon reviewing video of Officer Davis's interview, the Court is persuaded that these statements would

have given Defendant the impression that he could speak freely without concern

for whether he might be incriminating himself.

Finally, the last factor also weighs against the Government because Officer

Davis discussed the same alleged crime with Defendant that led to Defendant's

earlier invocation of his right to remain silent (i.e. possession of a firearm).

On balance, the Court finds that Officer Davis's questioning of Defendant

did not scrupulously honor Defendant's prior invocation of his right to remain

silent.  The Court therefore **GRANTS** Defendant's motion to suppress statements

he made during his interview with Officer Davis while being transported from the

police headquarters to the jail.

## IV.   MOTION TO DISMISS FOR FAILURE TO PRESERVE EXCULPATORY EVIDENCE

Finally, Defendant moves pursuant to Federal Rule of Criminal Procedure

12(b)(3) for an order dismissing the indictment due to the alleged "failure of the

Columbus Police Department to preserve cruiser video system and body

microphone recordings . . . ."  Mot. to Dismiss 1, ECF No. 27.[5]  For the following

reasons, the Court finds that any failure by the Columbus Police Department to

---

[5] The Government also addresses whether the failure to preserve video of Sergeant
Van Dop's interview of Defendant should result in dismissal of the indictment, but
Defendant does not appear to have made that argument.  Even if he did, the result
would be no different.  There is no evidence in the record that Defendant's interview
with Sergeant Van Dop would have been exculpatory or that the Government's failure to
preserve that video was the result of bad faith, as opposed to negligence or gross
negligence.

preserve video evidence in this case does not necessitate dismissal of the indictment.

"The Supreme Court has established two tests to determine whether a government's failure to preserve evidence amounts to a due process violation. The first test, established in [*California v. Trombetta*, 467 U.S. 479 (1984)], applies in cases where the government fails to preserve material exculpatory evidence, while the second test, established in *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), applies in cases where the government fails to preserve 'potentially useful' evidence." *United States v. Collins*, 799 F.3d 554, 569 (6th Cir. 2015); *see also Youngblood*, 488 U.S. at 57 ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.).

To be constitutionally material, "evidence 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Collins*, 799 F.3d at 569 (quoting *Trombetta*, 467 U.S. at 489). The destruction "of material exculpatory evidence violates a defendant's due process rights, irrespective of the good faith or bad faith" of government officials. *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

When evidence is merely potentially useful, "a defendant must show (1) bad faith on the part of the police, 2) that the exculpatory value of the evidence was apparent before its destruction, and 3) that the defendant would be unable to obtain comparable evidence by any other reasonably available means." *Wilson v. Sheldon*, 874 F.3d 470, 479 (6th Cir. 2017) (citing *Jobson*, 102 F.3d at 218). "In order to establish bad faith, 'a defendant must prove official animus or a conscious effort to suppress exculpatory evidence,'" *Collins*, 799 F.3d at 569 (quoting *Jobson*, 102 F.3d 214)), negligence, or even gross negligence, is insufficient. *Jobson*, 102 F.3d at 218.

The Court must determine first if a patrol video of the traffic stop and arrest would be "material exculpatory evidence" or merely "potentially useful." Defendant has not introduced evidence that a video of the traffic stop and arrest would be material exculpatory evidence. Defendant posits that "the missing patrol video would have shown that [Defendant] did not have a gun on his person when he left his vehicle and was going to the house where he was eventually tackled on the porch." Def. Supp. Mem. 12, ECF No. 33. But this is no more than "Defendant's contention that the [evidence] would have supported his claim," which is "no more than mere speculation." *Jobson*, 102 F.3d at 219 (quoting *Jones v. McCaughtry*, 965 F.2d 473, 479 (7th Cir. 1992)). Therefore, the Court finds that it is unclear whether any cruiser video of the traffic stop and arrest would have been exculpatory.

Because the cruiser video is not clearly material exculpatory evidence, but is rather potentially useful evidence, the Court next considers whether the police acted in bad faith, whether the exculpatory value of the evidence was apparent before its destruction, and whether Defendant is able to obtain comparable evidence by other means.

Defendant has failed to demonstrate that the police acted in bad faith regarding any cruiser video of the traffic stop and arrest. There are multiple ways that the patrol videos on the cruiser can be activated: 1) the cruiser can exceed a specific speed; 2) if the officers activate the police lights; and 3) officers can simply manually activate the video. Tr. 137, ECF No. 32. From Defendant's perspective, the issue in this case "is not whether the Officer chose not to create a piece of evidence, but rather whether they specifically chose NOT to preserve the evidence." Def. Supp. Reply 11, ECF No. 36. Defendant argues that the video that was taken was marked as "non-evidence," and therefore it was destroyed as part of the police department's records retention policy. *Id.* Defendant also argues, in the alternative, that the officers disregarded policies and procedures that required them to activate the video system in the first place. *Id.*

There is a small amount of evidence supporting Defendant's argument that the video system was activated. When Officer Davis was interviewing Defendant later in the evening, he stated Defendant must have known he was being stopped by the police, because "I had to jump out right away and hit the lights

because we were about to air it." Tr. 104, ECF No. 32. If he had "hit the lights," the video system would have been activated. At the suppression hearing, Officer Davis contended that this was simply part of an informal conversation with Defendant and he did not, in fact, "hit the lights." *Id.*

The Government, for its part, denies that any video was ever recorded of the traffic stop and arrest on the porch. Gov. Supp. Resp. 2, ECF No. 35. Officer Davis testified that he did not have time to activate his lights because Defendant pulled his car over to the curb so quickly. Tr. 17, ECF No. 32. Both officers testified that the lights were not activated, and no video was made of the traffic stop or arrest. The Court had the benefit of evaluating the officers' testimony and found them to be credible. Their testimony under oath before the Court far outweighs the value of one comment made by Officer Davis in discussing the arrest with Defendant.

Even if the lights had been activated and a recording had been made of the traffic stop and arrest, Defendant still would not have demonstrated that the police acted with bad faith in failing to maintain that recording. There is no testimony that the officers intentionally destroyed the video. To the contrary, there was testimony at the suppression hearing that only six officers in the Columbus Police are able to manually delete recordings, and any such deletion would have been recorded in a log. *Id.* at 212–13. At best, then, Defendant is left to argue that the cruiser video was improperly marked as not being evidence, resulting in its eventual deletion under the records retention policy. This type of

negligence, or even gross negligence, would be insufficient to support a due process violation even if there was substantial evidence that is what happened in this case (which there is not).

Defendant has fallen well short of demonstrating bad faith through a showing of "official animus" or a "conscious effort to suppress exculpatory evidence."

The Court next considers whether the exculpatory value of the evidence was apparent before it was allegedly destroyed. Defendant has not demonstrated that the exculpatory value of the evidence was apparent. There is no evidence that the officers viewed a video of the traffic stop and arrest or that they otherwise knew the video benefitted Defendant. To the contrary, Officer Davis testified as to what he thought any recording would have shown:

> We would have recorded the fail to signal because it would have backdated 90 seconds. We would have recorded the immediate stop and jump out of Mr. Jones from the vehicle. Would have observed -- you would have heard my commands that it was a traffic stop and get back in the vehicle. And we would have observed Mr. Jones running around the front of the vehicle onto the sidewalk and running westbound. It wouldn't have shown anything on the porch because number one, the SUV is blocking that view. Number two, it wouldn't have expanded that far to the right.

The Court has no basis to conclude that the exculpatory value of any cruiser video recording was apparent prior to its alleged destruction.

Finally, the Court considers whether Defendant is able to obtain comparable evidence by other means. Defendant can meet this element of the test. The only evidence Defendant has as a substitute for the cruiser video is

testimony that will be offered by the officers and, potentially, Defendant himself. Such testimony is not a reasonable substitute for what a video could have shown.

However, because destruction of the cruiser video recording was not in bad faith (if it was recorded in the first instance) and the possibility that the recording had exculpatory value was not established, *see Jobson*, 102 F.3d at 219, the Court **DENIES** Defendant's motion to dismiss.

## V.    CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion in limine, ECF No. 21, **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to suppress, ECF No. 22, and **DENIES** Defendant's motion to dismiss, ECF No. 27.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**